RECEIVED
OCT - 4 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ELLA M. BROWN

VERSUS

MICHAEL ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

CIVIL ACTION NO. 10-cv-0005

JUDGE DEE D. DRELL
MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION

Ella M. Brown ("Brown") filed an application for Disability Insurance Benefits ("DIB") on or about September 20, 2007 (R.51-60). Brown also protectively filed an application for Supplement Security Income Benefits ("SSI") on September 17, 2007 (R. 228-231).[1] The claims were initially denied on February 18, 2008 (R. 29-30, 232) and Brown timely filed a request for hearing before an Administrative Law Judge ("ALJ") on February 27, 2008 (R. 35-36). The ALJ held a hearing on May 13, 2009 and issued an unfavorable decision on July 1, 2009 (R. 233-255, 10-27). Brown sought review by the Appeals Council but review was denied on November 13, 2009 (R. 4-6). Thus the decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Brown filed the instant action seeking judicial review of the Commissioner's decision.

To qualify for disability insurance benefits, a plaintiff must

---

[1] The application was considered actually filed on September 26, 2007 (R. 228-231)

meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(I), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d)(1)(A). Second, the impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## Summary of Pertinent Facts

Brown, who was unrepresented, and Vocational Expert

("VE"), Beverly Majors, attended the hearing on May 13, 2009 (R. 233). At the time of the hearing, Brown was 46 years old and lived with her children in Cheneyville, Louisiana (R. 237-238). She testified she completed the tenth grade, was literate and could make change; however, she had trouble reading due to poor eyesight (R. 239-240).

Brown held jobs as a housekeeper, a sitter for an elderly person, a dishwasher and a cook but she could no longer work due to her hip and back problems (R. 240-241). She testified she took Loritab, Ultram and Flexeril for her back and hip and was under the care of Dr. Eric Dunes (R. 241). She testified that she used a cane but at home, she used it on an as needed basis (R. 242).

Brown stated she could not walk far at all and could not sit longer than 45 minutes at a time (R. 242). She complained of pain in her right shoulder due to carpal tunnel and lack of strength in her right hand (R. 242-243). She advised that she went to physical therapy for the carpal tunnel until they "restored" her and she continued to try to keep her hand strong (R. 243).

Brown also testified she underwent surgery for cataracts and treated her glaucoma with eye drops (R. 244). She took medication for depression which was managed by her physician but she had not been able to schedule an appointment with the Mental Health Department (R. 248-249). Other ailments included high blood pressure, diabetes, acid reflux and allergies (R. 249).

The pain pills she took caused drowsiness, so she did not do much during the day other than watch television, occasionally talk on the phone and go to church (R. 245, 247, 249). Her daughter helped her with her hair and fingernails (R. 245-246). She was not capable of doing laundry or cooking. However, she did grocery shop with the assistance of her daughter but was unable to carry the bags (R. 246). In fact, she testified that she could only lift ten pounds comfortably (R.244).

The VE testified that someone who was Brown's age with the same education and work experience who could lift and carry ten pounds occasionally and five pounds frequently, stand and walk about two hours in an eight hour day and sit six hours in an eight hour day but could not work around hazzards or do over-shoulder work with her right hand or right upper extremity could perform unskilled sedentary work (R. 252). Examples of jobs she could perform included that of a sedentary bookkeeping clerk, a sedentary information clerk and a general office clerk (R.253).

Brown began seeing Paul LaPoint, O.D. in 2000 for trouble reading, glare and itching and burning eyes (R. 20-22). In October of 2007, she was advised that she should return to the clinic for a glaucoma test (R. 168). The next record of an appointment was March 10, 2009 when she complained of pain, blurry vision and diabetic glaucoma (R.159). She was referred to Dr. Wallace for a consult for cataract surgery and Brown underwent the surgery on or

about May 6, 2009 (R. 157).

Brown was also seen by Gerald Gerdes, Jr. O.D. for a consult in December of 2007 (R. 130-136). Dr. Gerdes diagnosed Brown with bilateral nuclear sclerosis cataract, open angle glaucoma, myopia, astigmatism and presbyopia (R. 132). At that time, he did not recommend surgery for cataracts but recommended she continue with her treatment regimen for glaucoma (R. 132). Noted in Dr. Gerdes' report was the fact Brown could read fine print (R. 130).

Brown's medical records which were produced by Huey P. Long Medical Center for the time frame of February through November 2007 reveal she sought treatment for glaucoma, sciatica, right hip pain, diabetes and hypertension (R. 116-129). Results from a MRI conducted in February of 2006 revealed her lumbar spine was normal and images from x-rays showed mild osteoarthritic changes in her hip in May of 2007 (R. 125-128).

Additionally, testing conducted in December of 2007 at Christus St. Francis Cabrini Hospital revealed a diagnosis of muscle spasms in her back, degenerative changes in her spine including diffuse spurring at L3 and L4 and mild disc space narrowing at L4 and L5 (R. 140).

Brown was also seen at the Rapides Primary Health Care Center from June 2007 through March of 2009 (R. 178-187). She sought treatment for carpal tunnel syndrome, hypertension, diabetes, lower back pain, right wrist pain, left heel pain, glaucoma and

5

osteoarthritis. An x-ray of her right shoulder taken in March of 2008 revealed no abnormalities and the x-ray of her right hip showed only minor degenerative changes (R. 181). When she was seen in the clinic on June 22, 2007 complaining of hip pain, the doctor noted a diagnosis of osteoarthritis (R. 186-187). He rated her ability to walk, sit, stand, bend, pull, stoop and travel as diminished by up to 20% and her fine manipulation and finger dexterity as 20% to 30% diminished (R. 186). It was noted that she should lift no more than ten pounds at a time and her restrictions were her diagnosis of carpal tunnel syndrome (R. 187). However, he found Brown capable of sitting six hours a day, completing light activities, including light clerical tasks (R. 187).

Matthew Erickson M.D. performed a consultative examination on January 26, 2008 (R. 142-145). Dr. Erickson advised Brown complained of osteoarthritis, spurs of left heel, glaucoma, diabetes mellitus type two, high blood pressure and cataracts (R. 142). He confirmed that the x-ray of her hip showed mild osteoarthritic changes but he found the x-ray of her left foot was normal ("no osteophyte or spur formation in the calcancal region") (R. 144). He found her visual acuity, with correction, was 20/50 in the left eye and 20/40 in the right eye (as was found by Dr. LaPoint in March of 2009) (R. 144, 157). She required the assistance of a cane to ambulate and her grip strength was 4/5 on the right and 5/5 on the left (R. 144).

> Dr. Erickson concluded:
>
> The claimant presented today with an antalgic gait with a stooped station from kyphosis in her thoracic spine region along with a right leaning appearance needing a cane for assistance with ambulation. It would appear that this claimant would benefit from an assistive device for ambulation such as a wheeled walker with a seat. Based upon physical exam her range of motion is limited, she seems to have difficulty with grip strength in her right hand and is unstable on her feet.
>
> Based on today's examination, I believe the claimant would not be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitations. She would not be limited in her ability to hold a conversation, respond appropriately to questions, or carry out and remember instructions...

(R. 145).

The ALJ issued his decision and found Brown met the insured status requirements through June 30, 2011 and had not engaged in substantial gainful activity since her onset date (R. 15). Brown's severe impairments included: glaucoma, hypertension, diabetes, diminished visual acuity, and osteoarthrosis but none of these impairments, either on their own or in combination met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 15).

The ALJ determined Brown possessed the residual functional capacity ("RFC") to perform occasional lifting and/or carrying up to ten pounds frequently and frequently lifting and/or carrying less than ten pounds, to stand and/or walk up to two hours in an eight hour workday, sit for up to six hours in an eight hour workday and push and pull without restriction (other than as

7

specified for lifting and carrying) (R.16). However, she could not be exposed to hazards or perform over-the-shoulder work with her right upper extremity (R. 16). He further determined that she could not perform her past relevant work (R. 19).

Though Brown was a younger individual age 18-44 at the time of her onset, she was a younger individual age 45-49 at the time of the decision (R. 19). She had at least a high school education and could communicate in English (R. 19). Transferability of job skills was not material to the determination of disability (R. 19)

Considering Brown's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which she could perform (R. 20). Accordingly, she had not been under a disability from April 14, 2006 through July 1, 2009, the date of the decision (R. 20-21).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion. It must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162

(5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. However, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-344 (5th Cir. 1988); citing, <u>Hames v. Heckler</u>, 707 F.2d 162, 164 (5th Cir. 1983). Also, <u>Dellolio</u>, 705 F.2d at 125.

### Issues

Brown raises the following issue for appellate review:

> Whether her residual functional capacity assessment by the ALJ is supported by

9

substantial evidence.

<u>Residual Functional Capacity</u>

Brown contends the RFC assessment provided by the ALJ is not supported by medical evidence and is contrary to the assessment provided by the consulting physician. A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §416.945. Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. <u>Herron v. Bowen</u>, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, <u>Babineaux v. Heckler</u>, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. 20 C.F.R. §404.1546. See <u>Rivera-Figueroa v. Secretary of Health and Human Services</u>, 858 F.2d 48, 51 (1st Cir. 1988); <u>Soth v. Shalala</u>, 827 F.Supp. 1415, 1417 (S.D.Iowa 1993); <u>Santiago-Santiago v. Secretary of Health and Human Services</u>, 756 F.Supp. 74 (D. Puerto Rico 1991). Also, <u>Leggett v. Chater</u>, 67 F.3d 558, 565 (5th Cir. 1995).

The ALJ must perform a "function-by-function" assessment of

the claimant's ability to engage in work-related activities when making his RFC determination. SSR 96-8p. When making the RFC determination an ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. 20 C.F.R. § 404.1545(a). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. SSR 96-8p. Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

Among the contentions set forth by Brown is that the ALJ should have included carpal tunnel syndrome as a severe impairment. A "severe" impairment is one which imposes more than a minimal limitation on an individual's ability to perform basic work-related physical or mental activities. See 20 C.F.R. §404.1521. Evidence in the record does not support Brown's contention that he carpal tunnel is "severe". While a doctor at Rapides Primary Health Care Center noted in June of 2007 that her fine manipulation and finger dexterity were limited by 25 to 50 percent and her carpal tunnel syndrome diagnosis was a restriction, he found her capable of light clerical tasks. Additionally, the January 2008 report from Dr. Erickson noted Brown's grip strength in her right hand was a 4/5 which would cause her "difficulty". However, he failed to identify any limitations as a result thereof such as pushing or pulling or fine manipulation. Furthermore, Brown's own testimony indicated that she attended physical therapy for her hand until she was

11

"restored".

Brown also contends that the ALJ did not properly consider the side effects from her medication. Brown testified that she could not do much during the day because her medications caused drowsiness. This testimony is the only evidence found in the record regarding side effects from her medications.

Brown argues the ALJ posed an improper hypothetical question to the VE because he failed to include limitations regarding her eyesight and need to ambulate with an assistive device. Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, a determination of non-disability based on such a defective question cannot stand. Boyd v. Apfel, 239 F.3d 698, 706-707 (5th Cir. 2001), citing Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). There is absolutely no mention made of Brown's glaucoma or diminished visual acuity in the hypothetical posed to the VE. As pointed out by Brown in her reply brief, these jobs would require one to read quite a bit and have near acuity. Brown testified she had trouble reading and her best corrected vision, according to medical records, is 20/50 in the right eye and 20/40 in the left. Accordingly, the hypothetical

12

is flawed and the determination should not stand.

Additionally, the ALJ's determination that Brown did not always need a cane is not supported by substantial evidence. Brown testified she used a cane to walk; however, she did not always feel the need to use it in her home. Moreover, Dr. Erickson's report indicates she should probably use a walker with a seat as an assistive device. The only other evidence in the record is the entry from the emergency room on March 4, 2009 which indicated she "ambulates without difficulty." Whether Brown must use a cane or some other assistive device to ambulate should be determined and factored into how, if at all, it affects her RFC.

Brown also argues that the jobs presented to the ALJ by the VE are not sedentary unskilled jobs as she indicated. Brown states that "bookkeeper", "information clerk" and office clerk are all skilled sedentary jobs and the VE noted Brown was suited for unskilled sedentary work. The DOT numbers for the three cited jobs were 219.587-010, 237.367-046 and 249.587-018. All three jobs require at least frequent near acuity.

The undersigned cannot determine whether Brown is nearsighted or farsighted and whether she indeed can read fine print. The only specific notation in the record is from Dr. LaPoint's 2007 examination in which he noted she did not need cataract surgery and could read fine print. Over the course of the next two years, Brown's eyesight deteriorated as is evidenced by her need for

cataract surgery. However, we have no post surgery records and no other records regarding her near acuity.

Though the ALJ's finding of not disabled is not supported by substantial evidence, the undersigned is unable to render a determination of disabled as Brown does not meet a Listing and there is not enough evidence in the record to make a determination regarding her RFC and what jobs, if any, she can perform.

## Conclusion

IT IS RECOMMENDED that the finding that Brown is not disabled be REVERSED and the matter be REMANDED for further proceedings consistent with the views expressed herein.

Under the provision of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT**

WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this \_\_\_\_\_ day of October 2010.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

**WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of October 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

15